CHARLES W. JOHNSON,

*Plaintiff and Respondent,*

vs.

FRANK L. JOHNSON and HATTIE JOHNSON, his wife,

*Defendants and Appellants.*

(No. 2488; April 10th, 1951; 229 Pac. (2d) 918)

For the defendants and appellants the cause was submitted upon the brief of Ivan S. Jones of Kemmerer, Wyoming, and Guy B. Hockett of Pinedale, Wyoming.

No appearance for plaintiff and respondent.

## OPINION

RINER, Justice.

This cause presents a direct appeal proceeding to review a judgment of the district court of Sweetwater County. The litigation arose in consequence of a controversy concerning the amount claimed to be due to the plaintiff, Charles W. Johnson, now the respondent

here, from the defendants Frank L. Johnson and his wife, Hattie, who are the appellants in this court. The action in the court below was brought by Charles against the defendants, Frank and Hattie, upon an account, the plaintiff's petition in its alleged first cause of action being in the abbreviated form authorized by section 3-1408 W.C.S. 1945, which was in substance originally borrowed from the practice code of the State of Ohio; see Pages Ohio Code § 11, 334.

The second alleged cause of action in plaintiff's petition was based on a mechanics lien statement under which a foreclosure thereof was sought. The defendants' answer denied that any balance at all was due plaintiff on the account and claimed that $400.00 had been paid by them as a final settlement of the entire matter. Plaintiff filed a reply denying that this sum had been received by him as a settlement of his claims. We shall usually hereinafter refer to the parties by their given names, or as plaintiff and defendants.

On the trial of the case the testimony was sharply conflicting as to the issues before the court and accordingly we may limit our consideration of the facts presented in the case as required by our former decisions and as stated in Willis v. Willis 48 Wyo. 403, 429; 49 P. (2d) 670, thus:

"In this connection it must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

See also Jacoby v. Town of the City of Gillette, 62 Wyo. 487, 494; 174 Pac. (2d) 505, and cases there cited.

The facts as developed on the trial of the case in the

district court properly to be considered at this time are substantially as follows:

Previous to the year 1945 one Charles H. Howell owned a ranch located on Green River about ten miles north of the town of Green River, Wyoming. In 1929 Howell had caused to be constructed by plaintiff, Charles W. Johnson, a water wheel in the river for irrigation of some land in his ranch. In 1944 and 1945 he arranged with Charles W. Johnson to repair or reconstruct this wheel. At that time Howell was the ranch owner. Charles began the new work on this water wheel about March 2nd or 3rd 1945. This labor on the project was performed by Charles and a helper named Schultz, but Charles as contractor procured all the material for this construction job, and supervised what was done. The new work was finally completed about June 25, 1945. On April 14, 1945 Howell sold this ranch to the defendants. At that time a substantial part of the work still remained to be done. Thereafter Howell died some time in the year 1946. Charles claimed to have worked 379 hours on this project, after Frank and his wife became the owners of the ranch, and he also paid his helper, Schultz, who worked about 285 hours, the going rate of pay of 80 cents per hour. As the principal contractor who supervised the work his testimony was submitted that the going rate of pay at that time in the Green River area for work of a supervisory character was $1.25 per hour. There was also testimony on behalf of the plaintiff in the case that the prices of all the material items used in the wheel construction as shown by the itemized account hereinafter referred to were reasonable. The credits shown on this account were paid by Frank Johnson. The total of the items in work, labor and material shown by plaintiff's account attached to plaintiff's petition appears to be the sum of $1475.69. Deducting the payments made a balance still existed of

$709.56 according to that account—the first item of which is dated March 6th 1945.

At the time of the sale of the ranch Charles Johnson discussed with Frank and Howell the matter of the water wheel construction costs, this conversation occurring in the office of one Nebeker, an attorney-at-law, in the town of Green River, Wyoming. At that time Howell and Charles were square as stated by the latter to Frank and to Nebeker. Charles, at that time, never told Frank that it would cost $400.00 or less to complete the wheel; that when Charles went to see Frank about final settlement for this wheel construction and materials supplied, Frank had paid Charles $100.00 and at that time (June 27, 1945) paid him $300.00 more. Charles at that time did not say to Frank "that squares us up." The condensed itemized account presented by Charles W. to Frank at that time which purported to show the amount due from Frank to Charles and which was admitted in evidence without objections, is as follows:

"Green River, Wyo.
June 27, 1945

Frank L. Johnson
  To Chas. W. Johnson Dr.
Lumber, Hardware, Paint, and
  Cement _____$   213.02
Structural Steel Girders_____   100.00
Angle Irons _____    18.90
Cutting and Welding_____     6.00
Gas, Oil and Grease_____    13.60
Sand and gravel_____    28.05
Drayage _____    30.00
                                          _____
                                          409.57

Labor, Max Schultz
    284½ hr. at 80c_____   227.60
    Social Security Tax____    2.28
    Emp. Security Tax ____     6.37
                            _____
                                          236.25

Labor, C. W. Johnson
379 hr. at 1.25 ............................ 473.75

1119.57
Credit by Check............................... 100.00

Balance ............................................ $1019.57
June 27, Credit.................................... 300.00

Bal ...................................................... 719.57"

At this point it should properly be noted that under the date of June 27, 1945, a credit item of $300.00 is disclosed and a balance still due of $719.57 from Frank to Charles. The entire account aforesaid other than the credit of June 27th was in typewriting, but the date and the word "credit" and the figures showing the amount of the credit as well as the balance claimed to be due are written in in pencil and are in the handwriting of Charles according to the record before us. At that time Charles did not tell Frank that the latter had lived up to his agreement. Frank had told Charles previously to make certain changes in the plan of construction of the water wheel. This direction about changes was made approximately May 20, 1945, and the change directed at that time was that Charles should eliminate two of the piers to be used for the wheel and to employ the old cribbing to carry the upper end of the framing.

In response to inquiry by Howell at the time the ranch was sold as to what it would cost to complete the wheel Charles stated that the cash outlay would be to Frank around $400.00 but that he, Charles, would not guarantee that amount as a guaranteed price; that at that time Charles never entered into any oral or written agreement to complete the wheel for any specific figure; the water wheel was necessary to get water into the irrigation ditch which carried water on to some land of the Frank Johnson ranch.

The following verbatim excerpts from the record, present the explanation given by the plaintiff to the trial court why, as he (plaintiff) said, he never at any time undertook to give the defendant, Frank Johnson, a maximum or specific price for completing the water wheel.

"Q. Mr. Johnson, you heard the testimony here this afternoon about what took place on June 27, 1945, at the ranch. Did you at that time advise or state that you were satisfied with the payment of three hundred dollars?

"A. I absolutely did not.

"Q. What was said at that time by you?

"A. As near as I can remember, I told them that I would not accept it, that I would accept it as a payment on account, but I would not accept it as a final payment; I would give them a receipt for three hundred dollars, but not as a final payment.

"Q. Is this your marking as such on the bill?

"A. I did, yes.

"Q. Did you mark there was still a balance due at that time?

"A. I did.

"Q. And you specifically advised them you would not accept the three hundred dollars in full payment?

"A. I explained that to them, yes.

"Q. Referring to the year 1945, was the hostilities or war over at that time?

"A. No.

"Q. Was material readily obtainable at that time?

"A. Absolutely not.

"Q. Was it possible for you to arrive at the cost of material at that time in advance of purchase?

"A. Impossible.

"Q. Was anything said at the meeting on the 14th in Mr. Nebeker's office as to the basis on which your charges were to be made?

"A. Yes. * * *

"Q. When Mr. Frank Johnson asked you the question

as to the cost of completion of the wheel, what did you answer?

"A. I told them that it perhaps might cost four hundred dollars, maybe more; but I would not guarantee that price because I didn't know what the material was going to cost. I didn't know what trouble I was going to get into. I further went on to elaborate and told them if they would ask me to build on a sidewalk or house, on dry land, I could give them a pretty accurate estimate, but, in this case I had no way of knowing what trouble I was going to have to run into to get the piers down, and I had to put in coffer dams, and I could not see what the trouble was going to be.

"Q. Was anything said as to how you would arrive at the cost of—whether it would be four hundred or what the figure would be?

"A. No."

The testimony of the defendants and their witnesses was to the effect that Charles stated both in Nebeker's office and also at defendants' ranch when the former sought a settlement of the matter that $400.00 would be the maximum price for completing the wheel. Frank testified that Charles accepted the $300.00 payment he received from Frank at the time Charles came to the ranch as full settlement of the matter.

It is apparent that the issues between the parties were simply, viz. whether Charles W. Johnson agreed with Frank to complete the wheel for not to exceed $400.00 and also whether the total amount of $400.00 received by Charles from Frank was received by Charles in full settlement of the account for work, labor and materials supplied by Charles in constructing or completing the water wheel. That this is so appears from appellant's brief where we find it said:

"Thereafter, about April 20, 1946, plaintiff began this action against Frank L. and Hattie Johnson in the District Court of Sweetwater County, by filing his petition, in two causes of action, being the same claim, (and)

stated in the first cause of action as an action on account, in the statutory abbreviated from (form) and stated in the second cause of action as an action on the lien, and praying for foreclosure. Defendants answered, denying any balance due, and setting up the payment of $400.00 as final settlement and discharge of their obligation to plaintiff. Plaintiff replied, denying that the $400 was received as settlement. The case was tried on the issue thus produced."

The case was tried by the court without a jury and plaintiff was given a judgment on his first cause of action upon a finding by the court reading:

"(1) On the first cause of action that defendants are indebted to plaintiff in assumpsit on a contract which should be implied by law by reason of a benefit received by defendants at plaintiff's expense; that the amount of said indebtedness which defendants should in good conscience pay to plaintiff, based upon testimony regarding the estimated cost, the actual value of the goods and services and the existing situation between the parties is Three Hundred Fifty-Four and 78/100 (354.78) Dollars (after applying the Four Hundred Dollar payment which has heretofore been made to plaintiff by defendants) plus interest at the statutory rate."

The judgment upon this finding was:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that plaintiff have judgment against defendants for the sum of Three Hundred Fifty-Four and 78/100 Dollars (354.78) plus interest since June 25, 1945, at the rate of seven per cent (7%) per annum in the sum of $112.13, that he have his costs herein expended in the sum of Ten and 50/100 ($10.50) Dollars and that he have execution against defendants for all of said amounts."

The court found against plaintiff on his second cause of action and no complaint seems to be made by him that that was done. It would seem therefore that that matter is out of the case as here presented. The parties tried this case in the district court on the issues above

stated and both parties appear to have acquiesced in this course of procedure. It is too late now under the situation thus presented by the record for appellants to complain that the case was tried upon a different theory from that which was pleaded. See also Willis vs. Willis, supra, 48 Wyo. 421. Indeed the defendants' answer and plaintiff's reply thereto, as we have seen, disclosed that the issues we have above indicated were the very ones which were intended by the parties in advance of the trial to be the matters desired by them which the court should adjudicate. In addition to what is shown by the pleadings in the cause, it should be here also noted that 49 C.J. 782 § 1148 states that:

"While the issues in a cause are, as a general rule, confined to those raised by the pleadings, the parties may, by consent, either narrow or enlarge the issues made by the pleadings. They may depart from the issues made by the pleadings and try any other issue."

Mr. Freeman in Freeman on Judgments states on page 1470 § 695:

"But as we have already seen, to render a matter res judicata, it is not essential that it should have been distinctly and specifically put in issue by the pleadings. It is sufficient that it be shown to have been tried and settled in the former suit. The issues made by the pleadings may by the action or acquiscence of the parties be broadened to include other matters. A judgment is conclusive as to issues made by the course of the litigation and within the subject matter of the action. Though a defense was not raised by formal written pleading if it was actually litigated and decided, the judgment is conclusive."

In Grimm v. Sargent 179 Ia. 750, 162 N.W. 57, the Supreme Court of Iowa discussing briefly the contention which seems to be urged by appellants here, says that:

"In a way the point is made that a judgment beyond the issues is void for want of jurisdiction. There may

be authority for the proposition abstractly stated. See Judge v. Powers, 156 Iowa, 251, 136 N.W. 315, Ann. Cases 1915B, 280; Reynolds v. Stockton, 140 U.S. 254, 11 Sup. Ct. 776, 35 L. Ed. 464. But this rule has no application where the parties voluntarily try an issue not tendered in the pleadings."

So the Supreme Court of Kansas remarked in Avery Mfg. Co. v. Lambertson 74 Kan. 304, 86 Pac. 456 that: "It is technically true the defendant did not plead the compromise of the claim that the $400 paid by Cunningham had not been applied on the surety note as Cunningham directed. Evidence was offered, however, of this fact, without any objection on the part of the plaintiff, and witnesses were cross-examined by plaintiff's attorney in relation thereto. The parties to an action may enlarge the issues by mutually trying out issues of fact not involved in the pleadings."

It was also said in Brown v. California & Western Land Co. 145 Minn. 432, 177 N.W. 774 that:

"Defendant contends that the existence of this incumbrance was not pleaded as a ground for rescission. Whether this be true or not, this issue was voluntarily litigated by both parties, and was therefore properly considered by the court in determining the case."

In Friedman v. Isaacs 133 Misc. 435, 232 N.Y.S. 545 is found this language:

"There seems to be no doubt that parties can, regardless of the precise pleadings, try such issues as they may deem material, whether precisely covered by the pleadings or not. Frear v. Sweet 118 N.Y. 454, at page 458, 23 N.E. 910. But it is equally true, as was said by the Court of Appeals in Brightson v. H. B. Claflin Co. 180 N.Y. 76, 72 N.E. 920, quoting Earl, J., in Southwick v. First National Bank of Memphis 61 How. Prac. 164, 170, that 'pleadings and a distinct issue are essential in every system of jurisprudence.' It may be that under our more liberal practice which has since developed that rule might be stated as 'pleadings *or* a distinct issue are essential.' "

See also our own cases, Urbach vs. Urbach 52 Wyo.

207, 230, 73 Pac. (2d) 953; State vs. Underwood, 54 Wyo. 1, 39, 86 Pac. (2d) 707.

It is quite clear as it seems to us that distinct issues were presented to the district court and its adjudication thereon was invoked. The parties themselves in this case had suggested issues which they voluntarily tried and upon which the court reached an intelligible result. Under the authorities cited above, the pleadings of the parties, and the course of the trial as set forth in the record by the evidence submitted, we think the judgment rendered should be duly affirmed.

As also leading to the result reached as stated above we find that where all the evidence concerning a transaction involved has been completely submitted to the court and the defendant has not been misled by the variance if any between pleadings and proofs if the trial court adopts a different theory from that presented by the plaintiffs pleading and allows a recovery the judgment in the case will not be disturbed, the Appellate Court regarding all necessary amendments that should be made as made.

We observe that in Manning v. Dallas 73 Cal. 420 15 P. 34 the action was brought to recover a balance due on a mutual open and current account for work and labor. The trial court instructed the jury that although plaintiff had brought suit for a certain sum the jury were authorized to bring in a verdict for such a sum as they might, under the evidence, think his services were reasonably worth if it was found that he was entitled to anything. The Appellate Court held that the instruction was properly given and judgment in favor of plaintiff was affirmed against the defendant's contention that the instruction was erroneous because plaintiff had grounded his right to recover on a contract that he was to receive a certain amount for his services and not on a quantum meruit.

In Town of Holbrook v. Girand 52 Ariz. 291, 80 P. (2d) 695 the plaintiff sought a recovery on express contract while his pleading presented an action by quantum meruit for services rendered, the trial court rendered a judgment allowing a recovery for the reasonable value of the services rendered. This result was affirmed by the Supreme Court of the state. Other cases announcing a similar rule may be found in a note in 118 A.L.R. 1203 appended to the case last mentioned.

There is no complaint in the case at bar that the defendants were surprised by the evidence introduced on behalf of the plaintiff or that they did not understand the issues that were submitted to the court for adjudication. These cases would seem to allow the trial court to take the course it did in giving judgment for the plaintiff in the case before us.

It is pointed out in the case of Homan v. Steele 18 Neb. 652, 26 N.W. 472 that where substantial justice has been done and evidence has been introduced without objection disclosing that plaintiff is entitled to recover, an objection on appeal that the action should have been to recover on a quantum meruit and not on a special contract, would not be available to reverse the judgment on appeal. We are thoroughly satisfied that in the case at bar substantial justice was accomplished and it would serve no good purpose to reverse the case to enable plaintiff to amend his pleading to conform to the theory of the trial court in disposing of the matter.

*Affirmed.*

BLUME, J., concurs.

KIMBALL, C. J., (concurring) I add a few words in reference to a contention that is not specifically noticed in the foregoing opinion.

There is no doubt that plaintiff was employed by

defendants to complete the construction of the water-wheel. If, as explained by Judge Riner, plaintiff's evidence was sufficient to show that there was no agreement limiting his compensation, and the $400 received by him was merely in part payment, he was entitled to recover on defendants' implied promise to pay the reasonable value of the labor and materials, less $400, without any inquiry as to the amount of actual benefit to defendants. It does not seem to be contended that plaintiff's damage by that measurement was less than awarded by the judgment.

Defendants' objection to the judgment is on the ground that the court applied the wrong measure of damage, as shown by the recital that the indebtedness was "in assumpsit on a contract which should be implied in law by reason of a benefit received by defendants at plaintiff's expense." That recital seems to indicate that the court applied the measure of damage proper in cases of quasi-contract, as distinguished from cases of contracts either express or implied in fact. Plaintiff has filed no brief, and I assume, as defendants argue, that this was not the proper measure of damage under the issues and evidence in this case. If there was error, I think it was harmless, as the amount of the judgment was considerably less than plaintiff claimed as the reasonable value of the labor and materials under testimony that does not seem to be questioned. See Eller v. Salathe, 44 Wyo. 369, 377, 12 P. (2d) 386, 389.